## John D. Skiles, Appellant, *v.* John Sides, Sheriff.

*Landlord and tenant—Custodia legis—Distraint.*

It is a rule without exception, that a landlord cannot distrain goods which are in custody of the law.

Where goods in possession of a tenant are seized under a writ of replevin, the goods being still in possession of the sheriff, are in custody of the law, and are not the subject of a landlord's distress, although still on the leased premises.

Argued Nov. 19, 1895. Appeal, No. 33, Nov. T., 1895, by plaintiff, from judgment of C. P. Lancaster Co., June T., 1892, No. 66. Before RICE, P. J., WILLARD, BEAVER, WICKHAM, McCARTHY and ORLADY, JJ. Affirmed.

This was an action of trespass against John Sides, sheriff of Lancaster county, for delivery of certain goods under a writ of replevin, pending a landlord's distress, made after the writ of replevin had been served, but before the goods had been actually delivered by the sheriff.

*Errors assigned* (1–6) were, answers to plaintiff's points. These points and answers thereto are sufficiently set out in the opinion of the court.

*George Nauman*, for plaintiff.—Goods upon leased premises are liable for distress for rent: O'Donnel v. Seybert, 13 S. & R. 57; Weidel v. Roseberry, 13 S. & R. 180; Kessler v. Mc-Conauchy, 1 R. 440. There is no case which holds that goods taken in replevin are not subject to distress for rent while they remain on the premises leased: Acker v. Witherell, 4 Hill, 112.

*J. W. Johnson* and *John E. Malone*, for defendant, appellee. When the landlord went to the premises, he found the goods in the custody of the law and not liable to distress: Com. v. Lelar, 1 Phila. 173; Jackson & Gross on Landlord and Tenant, § 128, par. 6. See also Mills v. Davies, 1 Comyn's Reps. 591.

OPINION BY WICKHAM, J., December 2, 1895:

John Sides, the sheriff of Lancaster county, having in his hands a writ of replevin, issued at the suit of Bachrach & Bro. against W. W. Amos, authorized one of his deputies to execute it in the usual way. This of course involved the taking from Amos, and delivering to the plaintiffs in the writ, the goods therein mentioned.

Amos occupied apartments leased by him from John D. Skiles and owed the latter $300 for accrued rent. The articles to be replevied, over two hundred and fifty in number, consisted of photographic instruments and materials, furniture, carpets, etc. They were held by Amos, on the leased premises, as bailee of Bachrach & Bro., and were intermingled with his own goods. It is conceded that they were promptly and legally seized by the deputy, under the writ. After the seizure, Amos obtained about an hour in order to get sureties on a property bond. At

the end of the time given, he came back and said he could not give the bond. He had, in the meantime, seen a third person, who informed Skiles of what was going on.

As soon as the deputy was informed that no property bond would be offered, he began delivering the goods to one of the plaintiffs in the writ, who was present to identify and receive them. The work of delivery had just commenced, when Skiles, with his attorney and a constable, the latter provided with a landlord's warrant, issued by Skiles, appeared on the scene. The new comers proceeded to distrain the goods, by virtue of the warrant. Their right to do this was denied. During the controversy, the deputy sheriff and the persons with him were locked out of the rooms by Amos or the landlord and his party, They then left the building and the deputy reported the facts to the sheriff. These things happened on Friday. The sheriff consulted his counsel as to his rights and duties in the premises and went in person to the Amos rooms, on the following Monday. He secured admittance, without the use of any force. He found the property still there, and Amos at work finishing some pictures. The officer thereupon took up the work of executing the writ where his deputy had left off when interrupted two days before, and delivered the goods to the plaintiffs, who removed them. For this, the sheriff has been sued, in trespass, by the landlord, who was the plaintiff in the court below and is the appellant here.

The facts above recited are either uncontroverted, or established inferentially by the verdict.

At the trial, the plaintiff, through his first point, which he still insists is correct, contended that: " Under the law of Pennsylvania, goods or personal property on premises leased are subject for distress by a landlord, for rent due whether there be or not a writ of replevin for the recovery of these goods or personal property, issued against the tenant and in the hands of the sheriff, provided that the goods or personal property are found on the premises leased."

If this point means nothing more than that the mere possession of a writ of replevin by the sheriff, nothing having been done towards its execution, would not affect the landlord's rights, it should have been refused as entirely inapplicable to the facts of the case on trial, although abstractly considered,

good law.   The seizure of the goods by virtue of the writ was not only admitted but asserted by the plaintiff, whose theory was that the writ was fully executed.   If the point, as is probable, was intended to mean that property, although taken into the officer's custody, was liable to distress in every case where it was permitted to remain on the leased premises, it should have been refused for even a stronger reason.   The answer of the court was, in substance, that if the goods were still in the possession of the sheriff, when the plaintiff distrained, they were in the custody of the law, and therefore not liable.   This was a proper way of disposing of the point.

What is meant by the expression, in custodia legis?   "Property lawfully taken, by virtue of legal process, is in the custody of the law: " Anderson's Dict. Law, 302.

In Pierce v. Scott, 4 W. & S. 344, the question being whether property seized, by virtue of a writ of foreign attachment, was distrainable for rent, GIBSON, C. J., says: " It is a rule without an exception, that a landlord cannot distrain goods which are in the custody of the law."   In Com. v. Lelar, 1 Phila. 173, Judge SHARSWOOD, whose opinion, whether uttered in nisi prius or as a justice of the Supreme Court, is entitled to very high respect, says: " It is true that if the sheriff leaves the goods on the premises, there will be liability, but, as he is required by law not to take the actual possession out of the hands of the defendant until a reasonable time is allowed for the purpose of obtaining security on a property bond, during said period the goods are to be considered as in the custody of the law, and no more liable for rent than if the sheriff had actually removed them, and no one pretends that a landlord has the right to follow the goods of a stranger.   It would turn the privilege which the law gives the defendant into a weapon of offense and instrument of fraud, if, to defeat a plaintiff, whose goods he wrongfully holds, he could invoke his landlord and nave them applied to the payment of his rent, while the plaintiff was in the diligent pursuit of the remedy given him by law."   See also Jackson & Gross on Landlord and Tenant, sec. 128.   The case of Acker v. Wetherall, 4 Hill, 122, cited by the appellant's counsel in support of the contrary view, is not applicable, being based on a New York statute and not on the common law.

The plaintiff's second point, the answer to which is assigned for error, was as follows: " When goods, which are the subject of a writ of replevin, are placed by the sheriff in the power of the plaintiff, the goods are delivered to him."

In affirming this proposition the court explained to the jury that putting the goods in the power of the plaintiff in the replevin suit was to put him in possession of them. The explanation was not only proper but necessary as well, to prevent the jury from being misled. As said before, the goods to be replevied were quite numerous and were mixed with goods owned by the defendant in the writ. It was the sheriff's duty to put the plaintiff in actual possession of each article when identified. Symbolical delivery is not sufficient, unless the plaintiff waives actual delivery: Morris on Rep. (3d ed.) 113.

The plaintiff in his fourth point asked the court to charge: " If in this case the jury believe, that the deputy sheriff in charge of the writ of replevin, stated to the plaintiff, that the goods distrained upon by him as landlord had been delivered, by the said deputy sheriff, to M. Bachrach & Co. before the distress was made, and that thereupon the distress was made, the verdict must be for the plaintiff for such damages as he has sustained by the subsequent removal of the goods by the defendant."

The court, answering, said: " That point we also affirm. If you believe that the deputy sheriff deliberately deceived these parties, by saying to them, ' I have executed this writ,' when he had not done so, then it would be a fraud upon these parties, and the sheriff would be liable for his own act."

The plaintiff had no right to ask for an affirmation of this point. Its purpose was to invoke, in aid of his case, the doctrine of estoppel. One essential element of estoppel is, however, entirely omitted, namely, that the alleged representation was relied on, by the plaintiff, and misled him. The court below could properly have refused to affirm this inadequate proposition. Indeed, to have affirmed it without qualification would have been error. In using the word " deliberately " the evident meaning of the learned judge was to convey to the minds of the jurors the idea that if the deputy purposely made the statement attributed to him, and the effect thereof was to deceive and mislead the plaintiff or his bailiff, the defendant

would be liable, and the jury, connecting everything that was said in the charge, must have so understood the answer. It suggested that no estoppel could be based on mere inadvertent, unregarded and resultless expressions. Doubtless other and better language could have been employed, but it is too much to expect, that in the haste of a trial any judge will always find the very best and most correct form of words to express his thought. A verbal inaccuracy, of this sort, cannot be taken advantage of unless it was clearly calculated to injure the party complaining.

The plaintiff's assertion, made in the argument, that the deputy sheriff's retreat, under the circumstances hereinbefore detailed, amounted to a voluntary surrender or abandonment of the property taken under the writ of replevin, requires only passing mention. So far as the record shows, this matter was not raised at the trial and there is no assignment of error which raises it here. In the court below the plaintiff seems to have relied altogether on the other matters above discussed, and the further alleged fact that the goods had been turned over to the plaintiff in the replevin suit before the distraint.

All the questions of fact, which the parties chose to treat as disputed, were fully and fairly submitted to the jury by the learned judge who presided at the trial. The jury, acting on sufficient evidence, found for the defendant.

Looking at the facts, established by the verdict and the law applicable to them, the only trespass disclosed was that which was committed by the appellant himself in interfering with an officer engaged in the discharge of his duty. The sheriff did right in retaking the property.

Enough has been said to cover all the assignments of error. None of them can be sustained.

Judgment affirmed.